# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| BEVERLY MARTIN,<br>        Appellant, | DOCKET NUMBER<br>DC-0752-15-0108-C-2 |
|       v. | |
| UNITED STATES POSTAL SERVICE,<br>        Agency. | DATE: March 9, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Andrew J. Perlmutter, Esquire and Kevin L. Owen, Esquire, Silver Spring, Maryland, for the appellant.

Ladonna L. Griffith-Lesesne, Esquire, Landover, Maryland, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

## FINAL ORDER

¶1      The appellant has filed a petition for review of the compliance initial decision, which denied her petition for enforcement.  For the reasons discussed below, we VACATE the compliance initial decision and find that the administrative judge failed to follow the law-of-the-case doctrine when he ignored the Board's remand instructions regarding the voluntariness of the appellant's retirement.  We also find that:  the Board has jurisdiction over the petition for enforcement, the petition for enforcement was timely filed, and the appellant has failed to show that the agency was in noncompliance with the terms of the parties' settlement agreement.  Accordingly, we DENY the appellant's petition for enforcement.

## BACKGROUND

¶2      The essential facts in this matter are set forth in the Board's decision on the merits of this appeal and are not contested by either party.  *Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, ¶ 2 (2016).  Accordingly, we rely on the facts as set forth in that decision.

¶3      On July 22, 2011, the parties entered into a settlement agreement (2011 agreement) that resolved the appellant's pending complaints before the Equal Employment Opportunity Commission (EEOC) and the agency.  *Id*.  Pursuant to the terms of the 2011 agreement, the appellant promised, among other things, to retire effective July 31, 2011, and to withdraw all of her equal employment opportunity (EEO) complaints.  *Id*.  In return, the agency agreed to "enhance" its contributions to the appellant's retirement for the 3 previous years for an annual salary of $165,000.  *Id*.  The agreement further provided that, in the event that the Office of Personnel Management (OPM) did not approve the enhanced retirement contribution, the settlement agreement would "become inoperative."  *Id.*

¶4    The agreement did not make explicit whether the appellant would be restored to the status quo ante in the event that OPM did not approve the retirement with enhanced contributions. However, on July 21, 2011, the day before the agreement was executed, agency counsel sent the appellant's counsel an email stating that, while it was "anticipated" that OPM would approve the retirement provided for in the agreement, in the event it was not approved, the appellant "would be restored as if he/she had not left." *Id*., ¶ 3.

¶5    In April 2012, the parties learned that OPM had disapproved the enhanced agency contribution provided for in the 2011 agreement, *id*. ¶ 4, and the terms of the settlement became inoperative. Shortly thereafter, the appellant requested that she be returned to duty. *Id*. On July 31, 2012, the appellant notified her assigned EEOC administrative judge that the agreement had "failed because of mutual mistake of fact," and requested that her case be returned to the administrative judge's active docket. *Id*. On October 3, 2012, the agency reinstated the appellant to paid duty status retroactive to July 31, 2011, but without back pay. This resulted in the appellant being placed in a leave without pay (LWOP) status for the period from July 31, 2011, to October 3, 2012. *Id*.

¶6    On October 23, 2012, the appellant moved to amend her EEOC complaint to include, among other claims, an allegation that the agency had retaliated against her for her EEO activity by refusing to give her back pay upon her retroactive reinstatement. *Id*., ¶ 5. On February 13, 2013, the EEOC administrative judge denied that motion and deemed October 23, 2012, to be the date of first EEO contact regarding the claims contained in the motion. *Id*. On March 22, 2013, the appellant timely filed a new formal EEO complaint with the agency, alleging that the agency retaliated against her by refusing her back pay and benefits upon her retroactive reinstatement and discriminated against her on the bases of race, sex, and age. *Id*.

¶7    On October 27, 2014, after her new EEO complaint had been pending for more than 120 days, the appellant filed a Board appeal, in which she asserted that

she suffered a constructive suspension based on the agency's refusal to provide her back pay from July 31, 2011, to October 3, 2012. *Id*., ¶ 6. She also asserted that the constructive suspension constituted discrimination on the bases of sex and national origin, and reprisal for prior protected EEO activity. *Id*. On October 30, 2014, she amended her appeal to clarify that, in light of the Board's then-recent decision in *Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294 (2014), her argument was that the agency had imposed a nonconstructive suspension by placing her in an enforced LWOP status. *Martin*, 123 M.S.P.R. 189, ¶ 6.

¶8        Without providing written notice as to the appellant's burden of proof on jurisdiction and without holding a hearing, the administrative judge issued an initial decision dismissing the appeal. *Id*., ¶ 7. Applying case law appropriate to constructive suspension appeals, the administrative judge found that the appellant failed to make a nonfrivolous allegation that she was constructively suspended because her decision to retire in July 2011 was both knowing and voluntary. *Id*. He did not address the appellant's amended argument that the agency had nonconstructively suspended her by placing her in an LWOP status without her consent. *Id.*

¶9        The appellant petitioned for review of the initial decision, which the Board granted. *Id*., ¶¶ 1, 8. The Board held that, when an agency retroactively reinstates an appellant following OPM's negative retirement determination and without her consent places her in an LWOP status for the period preceding reinstatement, the LWOP status constitutes a suspension, and a suspension of more than 14 days is an appealable action. *Id*., ¶ 9. Thus, the appellant's suspension for 430 days was an action appealable to the Board. The Board reversed the initial decision, ordered the agency to pay the appellant back pay and other benefits under the Back Pay Act and/or Postal Service regulations, and remanded the appeal for adjudication of the appellant's discrimination and reprisal allegations. *Id*., ¶¶ 12-15.

¶10    While the remand appeal was pending, the appellant filed a petition for enforcement alleging that the agency failed to comply with the Board's order to pay back pay and other benefits. *Martin v. U.S. Postal Service*, MSPB Docket No. DC-0752-15-0108-C-1, Compliance File (CF-1), Tab 1. On May 23, 2016, the parties entered into a settlement agreement (2016 agreement) resolving the remand appeal and the compliance matter. *Martin v. U.S. Postal Service*, MSPB Docket No. DC-0752-15-0108-B-1, Remand File (RF), Tab 8 at 5-7.[3] The 2016 agreement provided in relevant part that the appellant would withdraw her pending remanded appeal and petition for enforcement, and would "receive the relief for back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations as ordered by [the Board] in [*Martin*, 123 M.S.P.R. 189, ¶ 15]." *Id.* at 5-6. The settlement agreement was entered into the record for enforcement purposes. *Id*. at 7; RF, Tab 10, Remand Initial Decision at 2.

¶11    On November 30, 2016, the appellant filed a second petition for enforcement alleging that the agency breached the 2016 settlement by the following: failing to restore 248 hours of annual leave in excess of the maximum carry over of annual leave allowed under Postal regulations and 124 hours of sick leave that she would have accrued during the period of her suspension; erroneously calculating the premiums due under the Federal Employees Health Benefits Program (FEHBP) to be subtracted from back pay; subtracting FEHBP premiums from back pay when she already had paid those premiums to OPM

---

[3] The 2016 agreement does not specifically reference MSPB Docket No. DC-0752-15-0108-C-1 (the first petition for enforcement). However, on May 25, 2016, or 2 days after the parties settled, the administrative judge issued an initial decision in the compliance matter, stating that the appellant was withdrawing her petition for enforcement because the agency had paid her the back pay required by the Board's 2016 order, evidently also as a result of the 2016 agreement. CF-1, Tabs 5-6. Likewise, on May 25, 2016, the administrative judge issued another initial decision in the remand appeal dismissing it as settled. RF, Tab 10, Remand Initial Decision.

during the period of her suspension; and failing to update her years of service with OPM based on the accrued sick leave for the suspension period. *Martin v. U.S. Postal Service*, MSPB Docket No. DC-0752-15-0108-C-2, Compliance File (CF-2), Tab 1 at 5-6. The agency responded, moving to dismiss the second enforcement petition for lack of jurisdiction because the appellant had withdrawn her first enforcement petition with prejudice after it was settled. Alternatively, the agency argued that the second petition for enforcement was untimely filed and that the agency had complied with the settlement agreement. CF-2, Tab 6.

¶12    The administrative judge issued a compliance initial decision. CF-2, Tab 10, Compliance Initial Decision (CID), at 9. He noted that, under the Back Pay Act, the agency must pay the amount of back pay and other benefits that the appellant would have earned or received if the personnel action at issue had not occurred. *Id.* He found, however, that, assuming the agency had never retroactively placed the appellant in an LWOP status after it granted her request to return to a paid duty status on October 3, 2012, she would not have earned or received any back pay and/or other benefits for the period from July 31, 2011, to October 3, 2012, because she was retired.[4] *Id.* Consequently, he found that the appellant failed to show that the agency materially breached the 2016 settlement agreement, as alleged, because she was not entitled to any relief for back pay, interest on back pay, and/or other benefits because she received retirement annuity benefits during the suspension period at issue. *Id.*

¶13    In her instant petition for review, the appellant asserts that the compliance initial decision misconstrued the Board's earlier findings and conclusions in *Martin*, 123 M.S.P.R. 189. *Martin v. U.S. Postal Service*, MSPB Docket No. DC-0752-15-0108-C-2, Compliance Petition for Review (CPFR) File, Tab 1 at 10-16.

---

[4] The appellant retired for a second time on May 29, 2015, prior to the 2016 settlement agreement's execution. *See Martin v. U.S. Postal Service*, MSPB Docket No. SF-0752-17-0412-I-1, Initial Appeal File, Tab 1.

She also reiterates the arguments she made in her second petition for enforcement, asserting that the agency breached the 2016 settlement agreement by failing to restore 248 hours of annual leave and 124 hours of sick leave that she would have accrued during the period of her suspension, and by making errors regarding her enrollment in the FEHBP. *Id*. at 16-18. The agency has responded in opposition to the petition for review, submitting additional evidence demonstrating that it complied with the settlement agreement. CPFR File, Tab 9 at 17-33. The appellant has responded, arguing, as she did below, that the agency breached the settlement agreement. CPFR File, Tab 10.

## DISCUSSION OF ARGUMENTS ON REVIEW

The remand initial decision ignored the Board's prior holding and thereby failed to follow the law-of-the-case doctrine.

¶14 As previously noted, the administrative judge—in the initial decision that the Board reversed in *Martin*, 123 M.S.P.R. 189—applied precedent involving constructive suspension appeals to conclude that the appellant failed to nonfrivolously allege that she was constructively suspended because her decision to retire was knowing and voluntary. *See Martin*, 123 M.S.P.R. 189, ¶ 7. In reversing the initial decision, the Board held that the agency's decision to retroactively place the appellant in an LWOP status was not a voluntary action on her part. *Id*., ¶ 9. The Board therefore found that the administrative judge erred when he applied precedent applicable to cases in which the voluntariness of leave was in question. *Id*. By extension, the Board implied that the voluntariness of the appellant's retirement was not at issue in this appeal. *Id.*

¶15 In the compliance initial decision under consideration here, the administrative judge mistakenly incorporated and relied upon his reversed finding (that the appellant's retirement was voluntary) to conclude that the appellant was not entitled to any back pay and benefits. In particular, he found that, because the appellant's decision to *retire*, which retirement OPM later disapproved, was done voluntarily, she was not entitled to any money. CID at 8 n.6. In doing so, the

administrative judge observed that the Board's decision did not specifically "find that the appellant's decision to *retire* was involuntary." CID at 8. As a result, the administrative judge tried to interpret the Board's decision so narrowly as to render it meaningless and thereby sidestep the Board's clear instructions to find that the appellant was entitled to back pay and benefits.

¶16    Similarly, the administrative judge's insistence on revisiting the question of whether the appellant retired voluntarily violated the law-of-the-case doctrine. Under that doctrine, a decision on an issue of law made at one stage of a proceeding becomes a binding precedent to be followed in successive stages of the same litigation; therefore, an administrative judge is bound by the full Board's findings and conclusions in an earlier phase of ongoing litigation. *Gordon-Cureton v. U.S. Postal Service*, 107 M.S.P.R. 79, ¶ 12 (2007) (recognizing that, under the "mandate rule," a variant of the law-of-the-case doctrine, a lower court has no power to deviate from the instructions of its reviewing appellate court); *Pawn v. Department of Agriculture*, 90 M.S.P.R. 473, ¶ 15 (2001). The law-of-the-case doctrine is intended to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Peartree v. U.S. Postal Service*, 66 M.S.P.R. 332, 339 (1995).

¶17    There are three recognized exceptions to the law-of-the-case doctrine: (1) the availability of new and substantially different evidence; (2) a contrary decision of law by controlling authority that is applicable to the question at issue; or (3) a showing that the prior decision in the same appeal was clearly erroneous and would work a manifest injustice. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 16 (2012), *overruled on other grounds by Singh v. U.S. Postal Service*, 2022 MSPB 15; *Hoover v. Department of the Navy*, 57 M.S.P.R. 545, 553 (1993). The law-of-the-case doctrine "applies not only to matters which were explicitly decided in a prior decision but also to matters decided by necessary implication," and the consistency derived from application of the

law-of-the-case doctrine avoids "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Hoover*, 57 M.S.P.R. at 552.

¶18      Here, the Board found that the appellant's retroactive placement in an LWOP status was involuntary; therefore, her decision to retire was not at issue in this case. *Martin*, 123 M.S.P.R. 189, ¶ 9. The administrative judge was, therefore, bound by the Board's determination unless one of the exceptions to the law-of-the-case doctrine applied. *See Boucher*, 118 M.S.P.R. 640, ¶ 16; *Timmers v. Office of Personnel Management*, 105 M.S.P.R. 4, ¶ 10 (2007) (finding that the Board's prior determination that it was appropriate to reopen the appeal was binding on the administrative judge on remand pursuant to the law-of-the-case doctrine; the administrative judge on remand erred in stating that the appellant failed to establish grounds for reopening the appeal). Based on our review, we find that these exceptions are absent here. Consequently, the administrative judge was bound by the Board's rejection of his finding that the voluntariness of the appellant's retirement was at issue in this case. He likewise was bound by the Board's finding that the appellant's placement in an LWOP status for 430 days was an appealable suspension, and because she was suspended without being afforded her due process rights of notice and an opportunity to respond, the suspension could not be sustained, entitling the appellant to back pay and benefits. *See Martin*, 123 M.S.P.R. 189, ¶¶ 9, 11, 15.

The Board has jurisdiction over this petition for enforcement.

¶19      The agency argued that the Board does not have jurisdiction over this petition for enforcement because the appellant withdrew her earlier-filed petition for enforcement with prejudice to refiling because the parties settled that matter. CF-2, Tab 6 at 5-6. While the administrative judge did not address this issue below, we do so now and find the agency's contention unavailing. The earlier

petition for enforcement was filed to enforce the Board's order, which remedied the appellant's suspension and afforded her due process protections. *Martin*, 123 M.S.P.R. 189, ¶ 14; CF-1, Tab 1. The instant petition for enforcement seeks to remedy an alleged violation of the 2016 agreement that resolved in part the earlier-filed petition for enforcement. CF-2, Tab 1 at 4. Although the Board's order and the 2016 agreement contain some identical language, the agreement is a separate contractual obligation by the agency that includes new time deadlines for its accomplishment. *Compare Martin*, 123 M.S.P.R. 189, ¶ 15, *with* RF, Tab 8 at 5-7. We find that the appellant is entitled to have her 2016 agreement enforced, notwithstanding that some of its terms were not identical to the Board's remedial order. *See King v. Reid*, 59 F.3d 1215, 1218-19 (Fed. Cir. 1995) (finding that the Board retains jurisdiction over a settlement agreement made part of the record and it may decide whether an agency has breached a settlement entered into the record); *Richardson v. Environmental Protection Agency*, 5 M.S.P.R. 248, 250 (1981) (finding that resolving an appeal on the basis of a settlement entered into the record for enforcement constitutes a final decision issued under the Board's appellate jurisdiction and, as a result, the Board has authority to enforce the settlement).

The petition for enforcement was timely filed.

¶20     The administrative judge also did not address the agency's contention that the instant petition for enforcement was untimely filed, although the agency raised the argument below and the appellant responded to it. CF-2, Tabs 6, 9. The agency contends that the Board should apply the 30-day filing rule of 5 C.F.R. § 1201.182 to petitions for enforcement of settlement agreements, using the date that the appellant became aware of a breach as the start of the 30-day period to file, and that the Board should find that the appellant failed to establish good cause for filing beyond 30 days from that date. CF-2, Tab 6 at 6-10.

¶21     The agency's assertion is unavailing. A petition for enforcement alleging breach of a settlement must be filed within a reasonable amount of time from the date the petitioning party becomes aware of a breach of the agreement. *Kasarsky v. Merit Systems Protection Board*, 296 F.3d 1331, 1335 (Fed. Cir. 2002); *see also Phillips v. Department of Homeland Security*, 118 M.S.P.R. 515, ¶ 11 (2012); *Eagleheart v. U.S. Postal Service*, 113 M.S.P.R. 89, ¶ 12 (2009). The reasonableness of the time period depends on the circumstances of each case. *Kasarsky*, 296 F.3d at 1335; *Phillips*, 118 M.S.P.R. 515, ¶ 11. The Board has found that a petition for enforcement of a settlement agreement—filed within 4 months of a party's awareness of the breach—was filed within a reasonable time when the appellant was taking action to confirm that the breach had occurred. *See Phillips*, 118 M.S.P.R. 515, ¶ 11. Here, nothing contradicts the appellant's assertion that she had been actively discussing with the agency how to resolve the alleged breaches of the 2016 agreement up to the date of filing her petition. CF-2, Tab 9 at 12. Under the circumstances, we find that the petition for enforcement was filed within a reasonable amount of time. *See Bostick v. Department of Health and Human Services*, 63 M.S.P.R. 399, 402 (1994) (finding that a 4-month delay in filing a petition for enforcement was reasonable under the circumstances, though a 21-month delay was not); *Chudson v. Environmental Protection Agency*, 71 M.S.P.R. 115, 118 (1996) (finding that a 1-year delay in filing a petition for enforcement was unreasonable when the appellant was an experienced Board litigant and was represented by counsel), *aff'd*, 132 F.3d 54 (Fed. Cir. 1997) (Table).

The appellant failed to prove that the agency breached the 2016 agreement by not restoring 248 hours of annual leave.

¶22     The appellant, as the party alleging breach of a settlement agreement, bears the burden of proof. *Komiskey v. Department of the Army*, 70 M.S.P.R. 607, 610 (1996), *aff'd*, 108 F.3d 1394 (Fed. Cir. 1997) (Table). The agency, upon the filing of a petition for enforcement alleging breach, must produce relevant,

material, and credible evidence of its compliance with the agreement. *Vaughan v. U.S. Postal Service*, 77 M.S.P.R. 541, 546 (1998). However, the ultimate burden of persuasion remains with the appellant. *Id*. Further, the Board will enforce the agreement according to its terms. *Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988).

¶23 As noted, the 2016 agreement provided in relevant part that the appellant would withdraw her pending appeal and petition for enforcement, and would "receive the relief for back pay, interest on back pay, and other benefits under the Back Pay Act and or Postal Service Regulations as ordered by [the Board] in [*Martin*, 123 M.S.P.R. 189, ¶ 15]." RF, Tab 8 at 5-6. The appellant concedes that she has received back pay and interest on back pay. CF-2, Tab 1 at 5, Tab 9 at 11. She is seeking other relief, such as annual leave[5] in excess of the maximum allowed to be carried over from year to year under Postal Service regulations, sick leave, proper placement in the FEHBP, and reimbursement of FEHBP premiums that the agency allegedly wrongfully charged to her. CF-2, Tab 1 at 5-6.

¶24 The appellant does not assert that the Back Pay Act entitles her to annual leave in excess of the carryover amount provided for in Postal Service regulations.[6] Indeed, we find that to do so would be unfounded. When, as here, the appellant is not a preference-eligible Postal Service employee, the Back Pay Act is inapplicable. *See Rivas v. U.S. Postal Service*, 72 M.S.P.R. 383, 391 (1996); *cf. Andress v. U.S. Postal Service*, 56 M.S.P.R. 501, 505 (1993) (finding that the back pay entitlements of preference-eligible employees of the Postal

---

[5] The Board has found that an award of back pay also includes restoring annual leave. *See Rivera v. U.S. Postal Service*, 107 M.S.P.R. 542, ¶ 9 n.5 (2007).

[6] Notwithstanding that the appellant did not argue the point, the administrative judge erroneously stated that the Back Pay Act governs the appellant's entitlements under the settlement agreement. CID at 6, ¶ 12; *supra*.

Service are governed by the Back Pay Act, 5 U.S.C. § 5596).[7]  Generally, when computing back pay for a nonpreference-eligible Postal Service employee, the provisions of the Employee Labor Relations Manual (ELM) govern.  *Driscoll v. U.S. Postal Service*, 112 M.S.P.R. 498, ¶ 6 (2009); *House v. U.S. Postal Service*, 85 M.S.P.R. 260, 262 (2000).  Here, however, the appellant asserts that, under 5 U.S.C. § 6304(d), she is entitled to annual leave in excess of the carryover amount provided in the ELM.  CPFR File, Tab 1 at 17.  She relies particularly on section 6304(d)(1)(A), which provides that annual leave lost because of "administrative error when the error causes a loss of annual leave otherwise accruable after June 30, 1960" shall be restored to the employee.  The appellant asserts that she lost 248 hours of annual leave due to administrative error.  *Id.* at 9, 17.

¶25      The appellant's assertion is unavailing.  The Postal Reorganization Act of 1970, 39 U.S.C. § 1005(f), provides that "[c]ompensation, benefits, and other terms and conditions of employment in effect immediately prior to the effective date" of the statute would continue to apply to the U.S. Postal Service "until changed by the Postal Service."  Pub. L. No. 91-375, § 1005(f), 84 Stat. 719, 732.  In 1973, Congress enacted the provision that is now codified at 5 U.S.C. § 6304(d), as section 3 of the Act to Amend Title 5, United States Code, To Improve the Administration of the Leave System for Federal Employees.  Pub. L. No. 93-181, § 3, 87 Stat. 705.  As that Act changed the "[c]ompensation, benefits, and other terms and conditions of employment," it would fall within the scope of those matters that the Postal Reorganization Act provided would remain unaltered

---

[7] The Back Pay Act provisions apply to preference-eligible Postal Service employees, even though the Back Pay Act generally does not apply to the U.S. Postal Service.  The rights that flow from the Back Pay Act were first afforded to preference-eligible employees by the Veterans Preference Act of 1944, as amended, and for that reason the Back Pay Act applies to preference-eligible Postal Service employees.  *See Davis v. U.S. Postal Service*, 64 M.S.P.R. 652, 658-60 (1994); *Andress*, 56 M.S.P.R. at 507-08.

"until <u>changed by the Postal Service</u>." Pub. L. No. 91-375, § 1005(f), 84 Stat. 719, 732 (emphasis supplied). Thus, the 1973 statute contained in section 6304(d) does not apply to the U.S. Postal Service. The legislative history of the 1973 statute fully supports that conclusion, stating that during the previous Congress, "the committee considered and rejected an amendment" to a similar proposed statute "to include current employees of the Postal Service" under the Act. H.R. Rep. No. 93-456 at 7 (1973). The report further stated that "[t]he majority of the committee felt that the details of the Postal Service's leave system should continue to be a subject of collective bargaining as contemplated by the Postal Reorganization Act of 1970." *Id.* A report addressing the similar statute introduced during the previous Congress stated as follows:

> Under the provisions of the Postal Reorganization Act of 1970, Public Law 91-375, employees of the Postal Service are not covered by amendments to the annual and sick leave provisions of chapter 63 of title 5. Therefore, the amendments to those leave provisions which are proposed in sections 1 through 4 of the bill would not apply to employees of the Postal Service . . . .

H.R. Rep. No. 92-1115 at 9. Therefore, we conclude that 5 U.S.C. § 6304(d) does not apply to the U.S. Postal Service and that the agency was free to adopt its own leave provisions after the effective date of the Postal Reorganization Act.

¶26        Further, Postal regulations provide that leave credited as a result of corrective action may not exceed the maximum amount of leave to which the employee is eligible. ELM § 436.2(d); CPFR File, Tab 9 at 23. An employee in the appellant's management category is entitled to carry forward 560 hours of annual leave. ELM § 512.321(b); CPFR File, Tab 9 at 22. The agency's Manager of Accounting Services declared as follows regarding the appellant's annual leave status: when the appellant was reinstated in October 2012, she was "invoiced" for 599 hours of annual leave that she had been paid when she separated in July 2011 (i.e., the dollar amount that she was paid for that leave when she retired in 2011 was subtracted from her back pay, and her leave hours were restored);

after her reinstatement, she accrued and was credited with another "240 plus" hours of leave; and thus, she had an annual leave balance in excess of her maximum allowed 560 hours. CF-2, Tab 6 at 22-23. Because she had more than 560 hours at the end of at least one leave year, she lost the excess annual leave in accordance with the ELM. *Id*. at 23. At her "second" retirement on May 29, 2015, the agency paid the appellant for her "brought forward" annual leave balance of 560 hours plus her accrued and unused annual leave balance for 2015 of 80 hours, for a total of 640 hours.[8] *Id*. The appellant has not rebutted the agency's evidence that, pursuant to the settlement agreement, she received all the annual leave that she was allowed under the ELM, that any annual leave that she lost between her reinstatement and her retirement was in accord with the ELM, and that, when she retired a second time, the agency paid her for all of the annual leave that she was due under the ELM.

The appellant has failed to show that the agency breached the 2016 agreement by not awarding her 124 hours of sick leave and not taking action to have OPM credit these hours to the leave balance to be included in her retirement computation.

¶27    Sick leave accrues under Postal Service regulations at a rate of 4 hours for each full biweekly pay period. CPFR File, Tab 9 at 24. The Manager of Accounting Services declared that the sick leave hours that accrued during the appellant's LWOP period—approximately 14 months—was 120 hours. *Id*. at 19. The appellant was restored sick leave for a total of 30 pay periods (from pay period 17 in 2011 to pay period 20 in 2012). *Id*. She did not receive restored sick leave for pay period 21 of 2012 because the restoration period did not

---

[8] The appellant has not shown that she should have been credited with more than 599 hours of annual leave upon her reinstatement. Applying the agency's same calculation method that determined the cash payment for her annual leave balance at retirement to how many leave hours she should be credited upon reinstatement, the 599 hours represents 560 hours of leave "brought forward" plus the unused annual leave that she accrued during the leave year before her "first" retirement on July 31, 2011.

encompass a full pay period. *Id*. The appellant does not dispute that the agency restored sick leave for the approximately 14 months that she improperly was placed in an LWOP status and does not rebut the agency's evidence that she was not due 4 hours of sick leave for pay period 21. CF-2, Tab 6 at 26. Thus, we find that the agency credited the appellant for all the sick leave that she was due under the ELM for the period that she was improperly placed in an LWOP status.

¶28    The agency informed OPM that the appellant's sick leave balance at the time of her "second" retirement on May 29, 2015, was 254.09 hours. CF-2, Tab 6 at 26. Subsequently, the agency submitted a Notice of Correction of Individual Retirement Record showing that the appellant's sick leave balance was increased by the 120 hours that she was due during her LWOP period, to 374.09 hours. *Id*. The appellant has not rebutted the agency's evidence that it transmitted to OPM the sick leave hours accrued during her LWOP period to be credited to her retirement computation. Hence, we find that the agency has shown that it is in compliance with the 2016 agreement.

The appellant has failed to show that agency breached the 2016 agreement regarding her enrollment in the FEHBP.

¶29    The appellant alleged that, after her reinstatement, she was placed in the wrong FEHBP plan. CF-2, Tab 9 at 18-19. She asserted that, when her suspension was cancelled, she elected FEHBP code 104, self-only coverage, but the agency placed her in FEHBP code 105, family coverage. *Id*. at 18.

¶30    The agency explained that the appellant had elected plan code 105 prior to the parties' 2011 agreement providing for her retirement. CF-2, Tab 6 at 31. Upon the appellant's reinstatement, she was allowed a new enrollment, and she elected plan code 104. *Id*. However, under the parties' 2016 agreement, the LWOP was voided and so the opportunity to choose a new enrollment code also was voided, and the appellant was returned to her former plan code of 105, apparently for the entire back pay period of July 31, 2011, through October 3, 2012. *Id*. Because OPM also had deducted FEHBP premiums from the

appellant's retirement benefits, which she had received from July 31, 2011, through October 3, 2012,[9] the agency stated that any refunds of those FEHBP premium payments should be issued by OPM. *Id*. at 28.

¶31 The appellant admits that, eventually, the agency allowed her to retroactively elect enrollment in FEHBP code 104 effective during the first open season after her reinstatement. CF-2, Tab 9 at 63. That retroactive election became effective on January 12, 2013. *Id*. In its response to the appellant's petition for review, the agency states that it reimbursed her for the difference between the higher FEHBP code 105 premiums and the lower plan code 104 premiums. CPFR File, Tab 9 at 19-20. Although the appellant replied to the agency's response, she did not dispute that she received that reimbursement.

¶32 We find that the agency's actions regarding the appellant's reinstatement into the FEHBP are consistent with the regulations regarding the FEHBP. As the agency states, when it reinstated the appellant after a LWOP period, she was entitled to change her enrollment plan code. CF-2, Tab 6 at 31; *see* 5 C.F.R. § 890.301(h)(1). However, when the appellant's LWOP period was voided, she was no longer entitled to change her enrollment code, and the agency appropriately reinstated her to plan code 105. The agency properly allowed the appellant to elect plan code 104 instead of 105 at the next open season after her reinstatement with pay, and reimbursed her for the difference between the higher and the lower plan code deductions. The appellant presented no evidence or argument to show that the agency did not properly follow the guidance of 5 C.F.R. § 890.301 when it took these actions. Under these circumstances, we find that the agency has complied with the 2016 agreement's terms regarding the appellant's enrollment in the FEHBP.

---

[9] The retirement benefits that the appellant received from July 31, 2011, through October 3, 2012, also were deducted from her back pay award. CF-2, Tab 6 at 28.

¶33      In sum, we conclude that the agency has produced evidence of its compliance with the 2016 agreement, which the appellant has not rebutted.  The appellant has failed to meet her burden of persuasion to show that the agency is not in compliance with the 2016 agreement.  *See Vaughan*, 77 M.S.P.R. at 546. Accordingly, we deny the appellant's petition for enforcement.

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before

you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                         /s/ for
                                        _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.